## AMENDED AND RESTATED MANAGEMENT AGREEMENT

**THIS AMENDED AND RESTATED MANAGEMENT AGREEMENT** (the "Agreement") is made on the 4th day of June, 2015, and effective February 1, 2015 ("Effective Date") by and between **MAKARIOS-PA, LLC**, a Pennsylvania limited liability company, having an address c/o Lerch, Early & Brewer, Chtd., 3 Bethesda Metro Center, Suite 460, Bethesda, MD 20814, Attn: Arthur F. Lafionatis (hereinafter called the "Owner"), and **SSH Management, LLC,** having an address of 123 South Broad Street, Suite 850, Philadelphia, PA 19109, Attn: Jeffrey R. Seligsohn (hereinafter called the "Manager").

**WHEREAS,** Owner owns 1524-26 Chestnut Street, Philadelphia, Pennsylvania upon which is built a three-story commercial building which totals approximately 23,133 square feet (said land and building are hereinafter collectively referred to as the "Property"); and

**WHEREAS,** Owner and Manager are parties to that certain Management Agreement dated August 1, 2011 ("Prior Management Agreement") pursuant to which Owner engaged Manager to perform certain limited duties in connection with the management of the Property, as more fully set forth therein, and Manager accepted such engagement upon all the terms and conditions thereof.

**WHEREAS,** Owner and Manager desire to enter into this Agreement to clarify the terms of Owner's engagement of Manager. As of the Effective Date, this Agreement shall supersede and replace in its entirety the Prior Management Agreement, which Prior Management Agreement shall no longer be in effect, and this Agreement shall control the relationship between the parties.

**NOW THEREFORE,** in consideration of the foregoing promises and the mutual promises and covenants herein made, and intending to be legally bound, the Owner and the Manager hereby agree as follows:

1. **ENGAGEMENT.** Owner hereby engages Manager as the exclusive manager of the Property, and Manager hereby accepts such engagement, subject to the terms and conditions of this Agreement. Manager is an independent contractor, who is assigned the limited powers contained herein, and no other relationship is created hereby.

2. **TERMS AND TERMINATION.**

    (a) *Initial and Renewal Terms.* Unless sooner terminated, as provided below this Agreement shall commence on the Effective Date, and shall be in effect for a period ending one year thereafter (the "Initial Term") unless earlier terminated in accordance herewith, and shall continue thereafter from year to year (the "Renewal Terms"; together with the Initial Term, the "Term") in full force and effect unless terminated in accordance herewith. Either party may terminate this Agreement at the end of the first year by providing the other party with sixty (60) days prior written notice of termination. Notwithstanding the foregoing, in the event that all or any portion of the Property is sold, this Agreement shall terminate on the date of sale, as to the portion of the Property that is sold provided that Owner has given Manager at least thirty (30) days prior written notice of such sale.

  (b) <u>Owner's Right to Terminate.</u> Owner shall have the right to terminate this Agreement effective immediately upon the happening any one of the following concerns:

   (i) The filing of a voluntary petition in bankruptcy by Manager;

   (ii) A proceeding in bankruptcy or insolvency brought against Manager, or the appointment of a receiver for Manager or its assets in any bankruptcy or insolvency proceeding, provided that such proceeding or appointment is not dismissed within sixty (60) days of the date of filing.

   (iii) The attachment or any other levy or lien filed against Manager, excluding a judgment lien that is covered by insurance, provided that such attachment, levy or lien is not discharged by bond or otherwise within sixty (60) days of the date of filing.

   (iv) The failure by Manager to cure a default under this Agreement within fifteen (15) days after receipt of notice from Owner that Manager is in default; provided, however, that if such default cannot reasonably be cured within such fifteen (15) day period, the time for Manager to cure such be extended as long as reasonably necessary so long as Manager commences such cure within fifteen (15) days after receipt of notice from Owner that Manager is in default and Manager is diligently pursuing such cure.

  (c) <u>Manager's Right to Terminate.</u> Manager shall have the right to terminate this Agreement effective immediately upon the happening any one of the following concerns:

   (i) The filing of a voluntary petition in bankruptcy by Owner;

   (ii) A proceeding in bankruptcy or insolvency brought against Owner, or the appointment of a receiver for Owner, the Property or the other assets of Owner in any bankruptcy or insolvency proceeding, provided that such proceeding or appointment is not dismissed within sixty (60) days of the date of filing.

   (iii) The attachment or any other levy or lien filed against Owner, excluding a judgment lien that is covered by insurance, provided that such attachment, levy or lien is not discharged by bond or otherwise within sixty (60) days of the date of filing.

   (iv) The failure by Owner to pay Manager the Management Fee (defined below) or the Construction Management Fee (defined below) or to reimburse Manager for expenses incurred by Manager pursuant to Section 5(b) below which is not cured within ten (10) days after receipt of notice from Manager.

        (v)        The failure by Owner to cure a default under this Agreement within fifteen (15) days after receipt of notice from Manager that Owner is in default of any other provision of this Agreement; provided, however, that if such default cannot reasonably be cured within such fifteen (15) day period, the time for Owner to cure such be extended as long as reasonably necessary so long as Owner commences such cure within fifteen (15) days after receipt of notice from Manager that Owner is in default and Owner is diligently pursuing such cure.

    (d)    <u>Accounting on Termination</u>. If this Agreement is terminated, Manager shall be entitled (in addition to any other rights or remedies available to it under this Agreement) to all sums, charges and fees which Manager is entitled to receive under this Agreement, together with costs and expenses reimbursable to it pursuant to Section 5(b) or for which it may be responsible arising out of anything done within the scope of its responsibilities under this Agreement to the date of termination, all as disclosed in the accountings described below. The amount of all of such sums, charges, fees and costs and expenses shall be ascertained for the period ending on the date of such termination and shall be paid to Manager (a) to the extent ascertained on the date of such termination, on such date, and (b) to the extent not ascertained on the date of such termination, on the date on which such sums, charges, fees and costs and expenses are ascertained after the date of such termination.

    (e)    <u>Claims on Termination</u>. Notwithstanding anything contained in this Agreement, the termination of this Agreement shall not prejudice any cause of action, claim or right of any party accrued or to accrue on account of any default by another party of its obligations under this Agreement or arising as a result of the termination of this Agreement other than in accordance with its terms, and any term, covenant, condition or provision of this Agreement referable thereto shall not merge, but shall survive, the termination of this Agreement.

    (f)    <u>Cooperation on Termination</u>. Each party to this Agreement agrees to cooperate reasonably with the others in connection with the transition of management of the Property upon a termination of this Agreement for any reason.

    3.    **POWERS AND DUTIES OF MANAGER.** Manager hereby agrees to diligently perform the following services in connection with the management of the Property:

    (a)    <u>Budget</u>. Manager shall prepare an annual budget ("Budget") for the management, care, protection, maintenance, operation and capital improvements of the Property for each calendar year and deliver such proposed Budget to Owner for Owner's approval at least sixty (60) days prior to the beginning of each calendar year. Manager shall prepare a Budget for the period between the date of this Agreement and the end of the then-current calendar year within ninety (90) days after the date of this Agreement and shall submit such Budget to Owner for Owner's approval. Notwithstanding any other provisions of this Agreement, the authority granted to Manager for the expenditure or disbursement of funds, for the making of contracts on

3

behalf of Owner, or for the incurring of liabilities with respect to the management, care, protection, maintenance, and/or operation of the Property, without in each instance first obtaining the prior specific approval of Owner, shall be limited to (1) the sums set forth in the Budget approved by Owner (the "Approved Budget"), provided that Manager may exceed the sums contained in the Approved Budget by not more than ten percent (10%) per line item and by not more than ten percent (10%) in the aggregate, (2) expenditures of an emergency nature, (3) expenditures required to maintain services to tenants pursuant to lease agreements, (4) expenditures required by any lease agreement, (5) expenditures in the opinion of Manager reasonably required to protect the property from imminent danger or injury and (6) any itemized expenses costing less than $2,000.00.

(b)   Collect Rents.  Manager shall collect promptly all rents and other income of every nature and description, which may become due to the Owner from tenants or occupants of the Property. Nothing herein contained shall constitute a guaranty by Manager of the payment of rent or other obligations of the tenants of the Property.

(c)   Personnel.  Manager agrees on behalf of Owner to hire and discharge and supervise the work of employees who work on-site at the Property (the "Building Employees"). Manager will hire such Building Employees as is necessary for the proper operation and maintenance of the Building, and the compensation paid to the Building Employees in question shall be considered as operating expenses of the Property. In the event that Manager desires to hire any employee(s) not provided for in the then current Budget, Manager shall first confer with and obtain Owner's written consent thereto.

(d)   Repairs and Maintenance.  Manager shall inspect the Property regularly, shall cause the Property to be maintained, and repaired in accordance with prudent standards of property maintenance for commercial buildings of a similar age and class in Philadelphia, Pennsylvania, and shall effect necessary non-capital repairs, renovations, and alterations to the Property. Manager's responsibilities shall include, without limitation, snow and ice removal, landscape maintenance, cleaning and other necessary repairs and maintenance and the enforcement of related issues.

(e)   Equipment and Supplies.  With respect to equipment, tools, appliances, goods, supplies and materials which shall be reasonably necessary or desirable to perform Manager's duties in accordance with the terms and provisions of this Agreement, including the cleaning, maintenance, upkeep, replacement, refurbishing and preservation of the Property, Manager may do any combination of the following:

    (i)   Purchase such equipment, tools and appliances, etc. in the name of Owner and charge the cost thereof to Owner. The items so purchased shall be the property of the Owner and shall not be used on any other property. When making purchases, Manager shall exercise reasonable efforts to obtain the best price available and shall disclose and rebate to Owner all discounts, commissions, or rebates. Such items shall be for the exclusive use of Owner.

    (ii) Rent or lease from Manager or from others such equipment, tools, appliances, etc. to be used at the Property and charge the cost thereof to Owner. Manager shall exercise reasonable efforts to obtain the best rental price available. Such items may be used for the Property and for other property managed by Manager as long as each Property so using such equipment, tools, appliances, etc. pays for its own use thereof.

    (iii) No item costing more than $1,000.00 shall be purchased without Owners prior consent. No item may be rented or leased for more than $1,000.00 without Owner's prior written consent.

  (f) <u>Utilities and Other Services.</u> Manager shall enter into reasonable and customary contracts, for the supply of extermination, cleaning, mechanical equipment maintenance, common utilities, landscaping, snow plowing, lawn sprinkler maintenance, power sweeping and fire sprinkler alarm and other services or such of them as shall be deemed advisable by Manager in the Owner's name through Manager acting as agent for Owner, and shall use reasonable efforts to provide for the proper supply and functioning thereof.

  (g) <u>Insurance.</u> Owner acknowledges and agrees that it currently maintains insurance in accordance with the terms of Section 6 hereof. Upon the written request of Owner during the Term of this Agreement, Manager shall cause insurance to be kept in force of every nature and limits and terms of coverage required by any mortgagees of the Property, including without limitation, public liability insurance and worker's compensation insurance complying with the requirements of Section 6(b) below or such additional coverage as is desired by Owner or required by Owner's mortgagee in the name of Owner and at Owner's expense. Any property damage insurance required hereunder shall contain a clause whereby the insurer waives subrogation or consents to a waiver of the right of recovery against Manager. Premiums for such insurance policies shall be considered operating expenses of the Property. Owner shall be the named insured on such policies, and Manager, any mortgagees of the Property and tenants, if required by their respective leases, shall be named as additional insured on all liability policies. Manager shall promptly investigate and make a full written report to Owner as to all accidents, claims for damage relating to the ownership, operation and maintenance of the Property, and any damage or destruction to the Property and the estimated cost of repair thereof, and shall prepare an and all reports required by any insurance company in connection therewith, and shall thereafter file and process any and all claims for insurance. Manager is authorized to settle and adjust any and all claims for sums not in excess of $5,000.00; however Manager shall not settle any claim(s) which would cause the aggregate of total amount of settlement/adjustments to exceed the sum of $25,000.00 in any given calendar year without first obtaining Owner's written approval. If any given claim is greater than $5,000.00, Manager shall not settle or adjust such claim without the prior approval of Owner.

  (h) <u>Property Records.</u> Manager shall maintain a separate, accurate accounting and full set of books and records for the Property, sufficient in accordance with prevailing accounting standards, to identify the source of all funds collected by it in its capacity as Manager and the disbursement thereof. Such records shall be kept at the office of Manager at its place of

business first set forth above (or as such other location as Manager shall notify Owner of in writing) and shall be available for inspection at all reasonable times by any partner of Owner. To the greatest extent possible Manager shall use computerized accounting and record keeping systems for all financial data related to the Property.

        (i)     Reports. As a standard procedure each month during the term of this Agreement, Manager shall render to Owner the following reports, if applicable:

        A.     Budget Analysis

        B.     Balance Sheet (to the extent Owner provides 2014 balance sheet)

        C.     Detailed General Ledger

        D.     Cash Flow Report

        E.     Open Accounts Payable Report

        F.     Check Register

        G.     Tenant Status Report

        D.     Tenant Aging Report

        H.     Vacancy Report

        I.     Copies of all banking statements/reports from all accounts in which Owner's funds are maintained by Manager

        J.     Monthly Operational Newsletter

        (j)     Funds. Manager shall deposit all funds received by Manager relating to the Property into one or more fully insured bank accounts, under Owner's name, with Philip Rosen, Jeffrey Seligsohn, Peter Soens and such representatives of the Owner that Owner shall appoint as the only signatories, but Manager will not be held liable in the event of bankruptcy, insolvency or failure of a depository. Manager shall keep a full and accurate record of Owner's accounts and shall establish such account in such a manner as to insulate them from claims against Manager. Manager shall have authority to draw on such accounts and make disbursements from any accounts of any depository as required to perform its obligations hereunder, and Owner will execute any document necessary to affect this paragraph. Manager shall, upon the direction of Owner, pay Owner's partnership distributions generated from the Property to Owner's partners.

        (k)     Landlord – Tenant Relations. Manager shall superintend and regularly monitor Tenant relationships at the Property, with a view toward cultivating and maintaining a good, responsive and mutually harmonious association with each such tenant; to take all

necessary and/or advisable steps to enforce lease provisions; to implement the delivery and/or furnishing to tenants of all services required to be delivered and/or furnished by Owner as landlord under the terms of the relevant lease agreements; to apprise Owner promptly of any material problems with particular tenants or tenancies, together with Manager's recommendations for resolving same.

(l) <u>Compliance with Legal Requirements.</u> Manager shall use commercially reasonable efforts to comply with any and all laws, rules, regulations, ordinances, orders or requirements affecting the Property by any Federal, State, County or Municipal authority having jurisdiction thereover, and orders of the Board of Fire Underwriters or other similar bodies, including, without limitation, the preparation and filing of any required forms. Manager may, in its discretion, appeal from any requirement it deems unwarranted and it may compromise or settle any dispute regarding such requirements.

(m) <u>Use and Maintenance of Property.</u> Manager shall at all times during the term of this Agreement manage, operate and maintain the Property according to the highest standards achievable consistent with the Budget. Manager shall see that all tenants are informed with respect to such rules, regulations, and notices as may be promulgated by Owner, governing bodies and insurance carriers. Manager shall use commercially reasonable efforts to enforce compliance by the tenants with such rules and regulations and with all applicable ordinances, rules and regulations imposed by Owner, governing bodies and insurance carriers.

(n) <u>Charges and Assessments.</u> Manager shall timely pay real estate taxes, insurance premiums, water and sewer rents, and other charges or assessments of every nature and description with respect to the Property. Manager, may with Owners written approval defend against and seek revision of, or appeal from, any assessment or charge which it deems improper or unreasonable and all such actions may be taken in its name or in the name of Owner. In connection with such actions Manager may, if it deems advisable, employ real estate experts for appraisals and testimony and also, in its discretion, pay any such charges or assessments under protest and seek refunds thereof, and compromise or settle any proceeding or claim with respect thereto which claims are less than $5,000.00.

(o) <u>Casualty and Eminent Domain.</u> Manager shall assist Owner in any eminent domain proceedings for the condemnation of the Property or any part thereof or in the prosecution of insurance claims following a fire or other casualty. Manager will make recommendations as to the advisability of compromise or settlement of any such proceedings or claims.

(p) <u>Construction.</u> Manager shall be responsible to monitor construction at the Property to minimize the disruption of the daily operation at the Property. Manager shall be responsible for the timely and proper completion of punchlist items specified by tenants after tenant improvements have been constructed. Upon the written request of Owner, Manager shall also arrange for and/or manage any capital repairs/improvements to the Property, in which case Owner shall pay Manager the Construction Management Fee determined in accordance with Section 5(c) below.

4. **CHARGES.** It is specifically understood that Manager does not undertake to pay any expenses of the Property from its own funds and shall be required to perform the services required by Section 3 above and make disbursements required by Section 3 above only to the extent that, and so long as, payments received from the revenue, if any, of the Property, or from Owner, shall be sufficient to pay the cost and expenses of such services and the amount of such disbursements. If it shall appear to the Manager that such revenues, if any, of the Property are insufficient to pay the same and to adequately fund reserves, the Manager shall so notify the Owner in detail of that fact and request the Owner to provide sufficient funds to pay such costs, expenses and disbursements and Owner shall provide such funds to Manager within ten (10) days after Owner's receipt of Manager's notice.

5. **MANAGERS COMPENSATION.**

 (a) <u>Fee for Services.</u> Owner shall pay Manager for its services as Manager under this Agreement a sum equal to the greater of (i) One Thousand Dollars ($1,000.00) per month or (ii) three percent (3.0%) of Gross Revenues (defined below) (as applicable, the "Management Fee") payable in monthly installments. Such Management Fee shall be paid from the funds collected as rents and deposited in Owner's account maintained by Manager. As used in this Section 5(a), the term "Gross Revenues" shall mean all revenue, whether in cash or credit, when collected, from sources derived from the operation of the Property, including, without limitation, the aggregate of all rentals, sales and charges for services rendered, ordered at, from or through the Property, or performed in, upon or about the Property and all services rendered, ordered at, from or through the Property, or performed in, upon or about the Property and all of its departments including the gross consideration or compensation received or receivable for services rendered to tenants of the Property in the conduct of business on the premises, whether similar or dissimilar to those herein above enumerated; provided that notwithstanding anything to the contrary in the foregoing, Gross Revenues shall not include (i) any revenue payable to a party other than Owner, (ii) security deposits not taken into revenue, insurance proceeds, condemnation awards or interest or investment income, (iii) capital contributions paid to Owner by Owner's investors, and (iv) proceeds of a sale, refinance or other capital event. Gross Revenues shall be accounted for on a cash basis.

 (b) <u>Reimbursement for Expenses.</u> In addition to the Management Fee, Owner shall reimburse Manager for costs and expenses reasonably incurred by Manager for Owner's account. Manager shall be reimbursed for all valid and allowable expenses and disbursements made for the account of Owner in accordance with the terms of this Agreement and the approved Budget promptly after submission of an invoice for the reimbursement.

 (c) <u>Construction Management Fee</u>. In the event Owner elects to have Manager undertake construction management duties in accordance with the last sentence of Section 3(p) hereof, Owner agrees to pay Manager a to-be-agreed upon fee (the "Construction Management Fee") for acting as construction supervisor with respect to any tenant improvements, capital improvements or other construction projects for the Property, which Construction Management fee shall be equal to a percentage of the total costs of the construction

project, which shall include any portion of any construction project, including, without limitation, capital improvement, and remodeling projects.

6. **LIABILITY, INSURANCE AND INDEMNIFICATION.**

(a) Exculpation. If either party is a partnership, trust, limited liability company or corporation, no general or limited partner of such partnership, trustee or beneficiary of any trust, member of an limited liability company or shareholder of a corporation, shall be personally liable to the other party to this Agreement except for the bad faith, gross negligence, willful misfeasance or criminal conduct of such individual.

(b) Owner's Insurance Policies. Owner shall maintain, at its own expense, the following insurance coverages:

(i) Special Cause of Loss Property insurance, and builder's risk insurance, where applicable, to cover physical loss or damage to the Property from fire and extended coverage perils, including vandalism and malicious mischief

(ii) Commercial General Liability insurance (ISO CG 00 01- current version available) with respect to the Property covering third-party bodily injury, property damage, and personal injury with minimum limits of Five Million Dollars ($5,000,000.00) per occurrence and a general aggregate limit of Five Million Dollars ($5,000,000.00). These limits may be obtained through a combination of primary and excess insurance. All such insurance shall include Manager as named insured thereunder.

All of Owner's insurance required hereunder shall be in force as of the date of this Agreement. Owner shall furnish Manager, prior to the date of this Agreement certificates of insurance evidencing Owner's insurance coverage as required under Section 6(b) above, including evidence that Manager will be given at least thirty (30) days' prior written notice of cancellation or any material change in coverage. All such policies shall be at Owner's sole cost, and the Commercial General Liability policy shall name Manager and Manager's affiliates as additional insureds. The insurance carriers for each line of coverage must have a minimum A. M. Best Rating of "A-VII ". Any deductible above $50,000 must be approved in writing by Manager. In cases where Owner and Manager maintain insurance policies that duplicate coverage, then Owner's policies shall provide primary coverage, except as provided below in Section 6(d).

Manager shall promptly investigate and make a full written report as to all accidents or claims for damage relating to the ownership, operation and maintenance of the Property, including any damage or destruction to the Property and the estimated cost of repair, and shall cooperate and make any and all reports required by an insurance company in connection therewith. All general public liability and other liability policies carried by or for Owner shall name Owner and Manager as insureds.

(c) Manager's Insurance Coverage. Manager shall maintain the following insurance coverage:

Insurance                                    Minimum Standards

9

| | |
|---|---|
| Workers' Compensation | Coverage A:<br>Minimum limits required by Statute (with proof of compliance as acceptable to Owner)<br><br>Coverage B:<br>$100,000 Bodily Injury by Accident (Each Accident)<br>$500,000 Bodily Injury by Disease (Policy Limit)<br>$100,000 Bodily Injury by Disease (Each Employee)<br>$500,000 Employer's Liability (Each Accident)<br>Said policy shall provide a waiver of subrogation in favor of Owner |
| Commercial General Liability Insurance | $1,000,000 per occurrence<br>$2,000,000 in the aggregate |
| Automobile, Single Limit Bodily Injury and Property Damage (to the extent Manager owns a vehicle) | $1,000,000 |
| Uninsured Motorists | As required by Statute |
| Umbrella Liability | $5,000,000 |
| Property Managers Errors & Omissions | $1,000,000 Per Claim<br>$1,000,000 Annual Aggregate |
| Crime (or Fidelity Bond) coverage protecting the Manager, Owner, and Owner's Affiliates against fraudulent or dishonest acts of Manager's employees, including Forgery or Alteration. | $1,000,000 Per Loss |

All insurance required hereunder shall be in force as of the date of this Agreement. Manager shall furnish Owner, prior to the date of this Agreement, certificates of insurance evidencing Manager's insurance coverage as required under Section 6(c) above, including evidence that Owner will be given at least thirty (30) days' prior written notice of cancellation or any material change in coverage. All such policies, except for workers' compensation for Manager's employees directly involved with the operation of the Property shall be at Manager's sole cost and shall include Owner and Owner's affiliates as additional insureds (except for the

10

fidelity policy(ies) as to which Owner and Owner's affiliates shall be named as loss payees.) The insurance carriers for each line of coverage must have a minimum A. M. Best Rating of "A-VII ". Any deductible above $50,000 must be approved in writing by Owner. In cases where Owner and Manager maintain insurance policies that duplicate coverage, then Owner's policies shall provide primary coverage, except as provided below in Section 6(d).

(d) <u>Primary Coverage</u>. The policies of insurance required to be purchased by Owner under this Agreement shall be primary with respect to the public liability risks relating to the Property, provided, however, that where loss occurs that is subject to the indemnification by the Manager contained in Section 6(f) below, the applicable insurance policies that Manager is hereunder required to purchase and maintain shall become primary.

(e) <u>Contractor's and Subcontractor's Insurance</u>. Manager shall require that each contractor and subcontractor hired to perform work at the Property maintain insurance against risk of physical damage to personal property belonging to it in amounts sufficient to replace such personal property in the event of loss, and insurance coverage at such contractor's and/or subcontractor's expense, in the following minimum amounts:

| Insurance | Minimum Standards |
|---|---|
| Workers' compensation | As required by law |
| Employer's liability | $500,000 |
| Commercial general liability* | $1,000,000 |
| Commercial auto liability* | $1,000,000 |
| Umbrella liability | $5,000,000 |

*These coverages shall be primary and will respond to any allegation, claim, loss, damage, demand or judgment, or other causes of action arising out of work done at, on or to the Property by the contractor or subcontractor on behalf of Owner and Manager. Owner/Owner's affiliates and Manager shall be named as additional insureds on such policies with respect to ongoing operations and completed operations.* The additional insured status under the CGL insurance, shall be effected using the ISO Additional Insured Endorsement form  CG 20 10 10 93 and CG 20 37 10 01 or such other endorsement or combination of endorsements providing coverage at least as broad and approved by the Owner in writing. The per occurrence and aggregate coverage limits of at least the amounts set forth above shall be specific to the Property and apply separately to the work of the applicable contractor or subcontractor under such contractor's or subcontractor's contract relating to the Property. The policies shall be written on an "an occurrence" basis.

(f) <u>Subrogation and Indemnity.</u>

(i) Any insurance which is procured and maintained and which in any way is related to the Property or the authorized activities therewith, is for the sole benefit of the party securing such insurance and others named as insured, and Manager and Owner hereby release each other from all rights of recovery under or through subrogation or otherwise for any loss or damage to the extent of such insurance coverage.

(ii)     Owner and Manager hereby waive against the other any and all claims and demands of whatsoever nature for damages, loss of use, including business income, or injury to the other's property in, upon or about the Property, except for claims and demands arising out of the gross negligence or willful misconduct of Owner, Manager or their respective agents, employees, officers, or contractors. The foregoing waiver shall not limit Owner's obligation to pay Manager the Management Fee, Construction Management Fee and reimbursement of expenses pursuant to Section 5(b), nor shall such waiver limit the parties' respective indemnity obligations set forth in this Agreement.

(iii)    Owner hereby indemnifies and holds Manager and its Affiliates and any of their respective partners, members, officers, employees, consultants, agents and representatives (collectively, the "Manager Indemnified Parties") harmless from and against any and all liabilities, fines, suits, claims, obligations, damages, penalties, demands, actions, costs and expenses of any kind or nature (including, without limitation, reasonable legal fees) arising out of any action or omission or course of action on the part of a Manager Indemnified Party in the performance of its obligations under this Agreement or otherwise in connection with any obligation incurred by, or instrument executed by, a Manager Indemnified Party alone, a Manager Indemnified Party together with Owner or by Owner alone, whether or not a Manager Indemnified Party shall be the signatory or one of the signatories on behalf of Owner and whether incurred or executed on behalf of Owner; provided that this indemnity shall not apply to any liabilities, fines, suits, claims, obligations, damages, penalties, demands, actions, costs and expenses to the extent resulting from the willful misconduct or gross negligence of a Manager Indemnified Party.

(iv)    Manager hereby indemnifies and holds Owner and its members, officers, employees, consultants, agents and representatives harmless from and against any and all liabilities, fines, suits, claims, obligations, damages, penalties, demands, actions, costs and expenses of any kind or nature (including, without limitation, reasonable legal fees) arising out of or caused by the willful misconduct or gross negligence of Manager.

(g)     Toxic Waste Indemnification. Owner agrees to indemnify, defend and hold Manager and its officers, employees and agents harmless from any claims, judgments, damages, penalties, fines, costs, liabilities (including sums paid in settlements of claims) or loss, including but not limited to, court costs and reasonable attorney's fees, consultant fees, and expert fees which arise during or after the term of this Agreement, from or in connection with the presence or suspected presence of toxic or hazardous substances at the Property or the land upon which the Property is constructed or which is appurtenant to it and which is owned by Owner. Without limiting the generality of the foregoing, the indemnification provided by this paragraph shall specifically cover costs incurred in connection with any investigation of site conditions or any clean-up, including studies or reports as needed or required, and remedial, removal or restoration work required by a federal, state, or local governmental agency or political subdivision because of the presence of toxic or hazardous substances in the soil, groundwater or soil vapor on or under the Property, unless the toxic or hazardous substances are present solely as a result of the negligence or willful misconduct of Manager, its officers, employees, or agents. Without limiting the generality of any of the foregoing, the indemnification provided by this Paragraph shall also specifically cover costs incurred in connection with:

(i)   toxic or hazardous substances present or suspected to be present in the soil, groundwater or soil vapor on or under the Property before the Term of this Agreement commences; or

(ii)   toxic or hazardous substances that migrate, flow, percolate, diffuse, or in any way move onto or under the Property after the Term of this Agreement commences; or

(v)   toxic or hazardous substances present on or under the Property as a result of any discharge, dumping, spilling (accidental or otherwise) onto the Property, during or after the Term of this Agreement by any person, corporation, partnership, or entity other than Manager.

7.   **COMMITMENT OF MANAGER.**  Manager shall be required to devote only such time as may be required for the good and proper management of the Property. Notwithstanding the foregoing, Manager shall be at liberty to manage Property for the account of other Owners and to engage in the same or other business for its own account or as agent or contractor for others without being in violation of the terms of this Agreement. Manager acknowledges and agrees that it has fiduciary obligation to Owner upon the execution hereof, and Manager waives and relinquishes any previous fiduciary obligations to any previous Owners of the Property. Manager shall keep all information confidential with respect to the Property, except as is necessary to disclose in the normal course of managing the Property and shall direct all questions of a confidential nature directly to the Owner.

8.   **NOTICES.**  Any notices from one party to the other shall be sent by way of facsimile with a copy to be sent prepaid by a recognized overnight delivery service or shall be hand-delivered, and such notices shall be addressed to the parties at the addresses first above stated, or such other addresses of which the parties shall give written notice from time to time. Notices sent by prepaid overnight delivery service shall be deemed given on the day of delivery as evidenced by the courier's delivery receipt.

9.   **INVALIDITY OF PARTICULAR PROVISIONS.**  If any term of provisions of this Agreement, or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Agreement, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each term and provision of this Agreement shall be valid and be enforced to the fullest extent permitted by law.

10.   **MISCELLANEOUS.**  All of the covenants and agreements contained in this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors, assigns and legal representatives. This Agreement and any of Manager's or Owner's respective obligations hereunder or their respective right, title or interest hereunder, shall not be sold, transferred, assigned, pledged or delegated by Manager or Owner without the express prior written consent of the other party hereto. This Agreement contains the entire agreement of the parties and may not be modified except by an instrument in writing signed by both parities. This Agreement shall be governed by, and enforced under, the laws of the Commonwealth of Pennsylvania, and all legal proceedings brought under or with respect to this Agreement shall be brought in the federal or state courts sitting in Philadelphia, Pennsylvania.

No waiver, express or implied, by either party of any breach of any covenant, agreement, or duly contained in this Agreement shall ever be held or construed to be a waiver of any other breach of the same or of any other covenant, agreement of duty. Titles of the paragraphs herein have been inserted as a matter of convenience of reference only and shall not control or affect the meaning or construction of any of the terms and provisions hereof.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement under seal of the first date above written.

**OWNER:**

**MAKARIOS-PA, LLC**, a Pennsylvania limited liability company

By: *Katherine Calouiris Toutros* (signature)

Name: KATHERINE CALOUIRIS TOUTROS

Title: Member


**MANAGER:**

**SSH MANAGEMENT, LLC**, a Pennsylvania limited liability company

By: (signature)

Name: Jeffrey R. Seligson

Its: Member